Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
*switcheson@insightplc.com*

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Case No. '25CV2198 AGS VET

|  |  |
|---|---|
| SOFTWAVE TISSUE REGENERATION TECHNOLOGIES, LLC, an Ohio limited liability company, | **PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** |
| Plaintiff, | |
| vs. | |
| DJO, LLC, a Delaware limited liability company, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff SoftWave Tissue Regeneration Technologies, LLC (the "Plaintiff" or "SoftWave TRT") files this Complaint against Defendant DJO, LLC, and/or through its brand, Chattanooga Rehab ("CR") (hereinafter, "Defendant"), and in support hereof shows unto the Court the following:

**PARTIES**

1.    Plaintiff SoftWave Tissue Regeneration Technologies, LLC ("SoftWave TRT") is an Ohio limited liability company with its principal place of business located at 10000 Avalon Blvd., Suite 720, Alpharetta, GA 30009.

2.    Defendant DJO, LLC, is a Delaware limited liability company with its principal place of business located at 5919 Sea Otter Place, Suite 200, Carlsbad, CA 92010 and may be served with Summons and a copy of this Complaint by delivering the same to its registered agent, CT Corporation System, 1501 Corporation and/or National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

**JURISDICTION AND VENUE**

3.    This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284, and 285, and the Lanham Act 15 U.S.C. §§ 1051 *et seq*.  Accordingly, this Court has federal question jurisdiction pursuant to 15 U.S.C. § 1121 and 35 U.S.C § 281.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.    This Court has personal jurisdiction over Defendant because:  Defendant has minimum contacts within the State of California and in the Southern District of California; Defendant has purposefully availed itself of the privileges of conducting business in the State of California and in the Southern District of California; Defendant has sought protection and benefit from the laws of the State of California; Defendant regularly and continuously conducts business in this District and have infringed and/or induced infringement, and continue to do so, in this District and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of California and in the Southern District of California. In addition, this Court has personal jurisdiction over Defendant because minimum contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. More specifically,

Defendant, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in the United States, the State of California, and the Southern District of California. Moreover, Defendant's website advertises products and services in this District and offers to sale and sells the infringing product "Intelect® Focus Shockwave" ("IFS Device") and instructs its customers how to use the device in an infringing manner. *See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

6.      Defendant has committed patent infringement in the State of California and in the Southern District of California.  Defendant solicits customers in the State of California and in this District. Defendant has customers who are residents of the State of California and this District and who use Defendant's product(s) in the State of California and in this District.

**THE ACCUSED PRODUCT**

7.      This case involves claims of patent infringement under the Patent Act, 35 U.S.C. § 101 *et seq.* based on Defendant's making, use, offering for sale and sales of its IFS Device (also referred to as the "Accused Product") that uses Extracorporeal Shock Wave Technology ("ESWT") for various medical indications, and according to CR's website, the IFS Device offers:

> Greater Power & Depth for Better Treatment In Extracorporeal Shock Wave Therapy (ESWT), a wave is produced by a small explosion generated underwater inside an applicator. This wave is focused through a lens and transmitted into the tissue.
>
> Chattanooga's Intelect Focus Shockwave device electromagnetically generates an extracorporeal shock wave, which produces a high pressure peak in a very short amount of time (<2s). This can penetrate deep into the tissue, up to approximately 4.7", with a precise focus on a small target, for treating heel pain due to chronic proximal plantar fasciitis.

*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

8.      The IFS Device is a product that is made, used, sold, offered for sale, and imported in 23the United States by Defendant and possibly others.



*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

### PRIOR COMMUNICATIONS BETWEEN THE PARTIES

9.      On February 7, 2020, counsel for SoftWave TRT sent a letter to Mr. Bradley Tandy, Executive Vice President, General Counsel and Secretary of Defendant.  See **Exhibit A** for a copy of this February 2020 Letter.  In this February 2020, SoftWave TRT notifies Defendant of its U.S. Patent No. 8,535,249 (the "'249 Patent") and its "fairly expansive patent portfolio."  SoftWave TRT put Defendant on notice that it needed a license for its IFS Device and offered a "possible business resolution."  The parties did not reach a resolution at that time.

10.     Since at least February 2020, Defendant has had notice of the '249 Patent.

11.     Nearly five years later, on February 21, 2025, counsel sent another letter to Mr. Tandy of Defendant again notifying him of the '249 Patent and SoftWave TRT's related patents.  See **Exhibit B** for a copy of the February 2025 Letter.

12.     Counsel for SoftWave TRT and Defendant spoke in March 2025, and the parties did not resolve this dispute.

## HISTORY OF SOFTWAVE TRT

10.     SoftWave TRT is a medical technology company that develops, manufacturers, and sells ESWT devices used to treat a variety of medical conditions under the name SoftWave™ Acoustic Wave Therapy.

11.     Founded in 2004, the predecessor in interest to SoftWave TRT is a "medical technology company that is developing advanced solutions specializing in shock wave therapy for better patient healing."  *See* SoftWave TRT's website, available at www.softwavetrt.com/about-softwave.

12.     SoftWave TRT is currently engaged in business throughout the United States. SoftWave TRT also has a strong international presence through its German affiliate, MTS Europe GmbH.

13.     SoftWave TRT develops and manufactures its "SoftWave" devices through its German affiliate, MTS.  The technology utilized in the devices can be categorized into two groups: (a) patented, unfocused "SoftWaves" for soft tissue indications (*e.g.*, wounds) and (b) focused shockwaves for lithotripsy and bony indications (*e.g.*, non-healing fractures).

14.     The patented SoftWave technology uses various lens configurations to produce pressure waves. These waves have a characteristic pressure profile of short rise-times reaching high amplitudes (comparable to a sonic boom).  The pressure waves can be shaped through a reflector, which enables the transmission of either highly focused shockwaves for use on urinary stones or non-union fractures, or soft-focused or unfocused pressure waves (*i.e.*, SoftWave) for most soft tissue indications.

15.     SoftWave TRT's patented technology is distinguished from competitors' shockwave technology in that SoftWave TRT uses a patented parabolic (as opposed to an ellipsoid) reflector in the therapy head.  This allows delivery of unfocused waves of acoustic energy over a broad target area.

16.     The fact that SoftWave TRT's technology generates less pain, has a higher efficacy rate, and has a lower re-treatment rate further distinguishes it from its competitors' higher-energy, more focused shockwave systems.

17.    As the industry leader, SoftWave TRT's discovery that its shockwaves have the same or better clinical benefit as higher-energy focused shockwaves for most medical conditions has allowed it to further develop the idea into a useful format and secure patents protecting its inventions.

18.    SoftWave TRT's technology provides a number of advantageous benefits, including, but not limited to: (a) painless treatments not requiring the use of localized anesthesia; (b) the ability to treat larger surfaces, such as wounds, faster and more efficiently than competing shockwave devices; and (c) small, compact devices that are less expensive to manufacture than competing devices.

19.    SoftWave TRT was the first company to discover (and patent the inventions used to generate) the biologic response generated by unfocused SoftWave technology, including: (a) promotion of growth factors (e.g., VEGF, BPM, and OP); (b) promotion of nitric oxide; (c) improved vascularity; and (d) migration and differentiation of stem cells.

20.    SoftWave TRT's extensive patent portfolio includes but is not limited to: (a) dozens of United States Patents; (b) published United States patent applications; (c) international patent applications; and (d) international patents.  Additionally, as of July 19, 2022, SoftWave TRT was granted four (4) new patents:  U.S. Patent Nos. 11,389,373; 11,389,370; 11,389,371; and 11,389,372.  *See* https://softwavetrt.com/4-u-s-patents-issued-on-july-19-2022/.  Specifically, SoftWave TRT's patent portfolio consists of at least the following:

| Patent/Pub. No. | Date | Title |
|---|---|---|
| U.S. 7,470,240 | Dec. 30, 2008 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,841,995 | Nov. 30, 2010 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,905,845 | March 15, 2011 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,883,482 | Feb. 8, 2011 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,507,213 | March 24, 2009 | Pressure pulse/shock wave therapy methods for organs |
| U.S. 7,537,572 | May 26, 2009 | Treatment or pre-treatment for radiation/chemical exposure |
| U.S. 7,601,127 | Oct. 13, 2009 | Therapeutic stimulation of genital tissue or reproductive organ of an infertility or impotence diagnosed patient |
| U.S. 7,497,834 | March 3, 2009 | Germicidal method for eradicating or preventing the formation of biofilms |
| U.S. 7,497,835 | March 3, 2009 | Method of treatment for and prevention of periodontal disease |

| Patent/Pub. No. | Date | Title |
|---|---|---|
| U.S. 7,544,171 | June 9, 2009 | Methods for promoting nerve regeneration and neuronal growth and elongation |
| U.S. 7,600,343 | Oct. 13, 2009 | Method of stimulating plant growth |
| U.S. 7,578,796 | Aug. 25, 2009 | Method of shockwave treating fish and shellfish |
| U.S. 7,497,836 | March 3, 2009 | Germicidal method for treating or preventing sinusitis |
| U.S. 8,162,859 | April 24, 2012 | Shock Wave Treatment Device and Method of Use |
| U.S. 7,594,930 | Sept. 29, 2009 | Method of attaching soft tissue to bone |
| U.S. 7,988,648 | Aug. 2, 2011 | Pancreas Regeneration Treatment For Diabetics Using Extracorporeal Acoustic Shock Waves |
| U.S. 8,257,282 | Sept. 4, 2012 | Pressure Pulse/Shock Wave Apparatus for Generating Waves Having Plane, Nearly Plane, Convergent Off Target or Divergent Characteristics |
| U.S. 8,535,249 | Sept. 17, 2013 | Pressure Pulse/Shock Wave Apparatus for Generating Waves Having Plane, Nearly Plane, Convergent Off Target or Divergent Characteristics |
| U.S. 7,390,308 | June 24, 2008 | Apparatus and process for optimized electro-hydraulic pressure pulse generation |
| U.S. 6,217,531 | April 17, 2001 | Adjustable electrode and related method |
| U.S. 7,695,443 | April 13, 2010 | Device for generating shock waves |
| U.S. 7,775,995 | Aug. 17, 2010 | The Use of a Thyristor for Electric Switching During the Generation of Shock Waves |
| U.S. Pub. 2007/0239082 | Oct. 11, 2007 | Shock Wave Treatment Device |
| U.S. Pub. 2008/0191596 | Aug. 14, 2008 | An Improved Device For Producing Electrical Discharges in an Aqueous Medium |
| U.S. Pub. 2008/0269651 | Oct. 30, 2008 | Wound Care Bandaging In Combination With Acoustic Shock Wave Applications |
| U.S. Pub. 2009/0041864 | Feb. 12, 2009 | Apparatus and Method for Cellular Extract Enhancement |
| U.S. Pub. 2009/0088670 | April 2, 2009 | Shock Wave Coupling Adapter and Method of Use |
| U.S. Pub. 2009/0093739 | April 9, 2009 | Apparatus for Generating Electrical Discharge |
| U.S. Pub. 2011/0177576 | June 21, 2011 | Shock Wave Cell Treatment Device And Method To Enhance Cell Replication |
| U.S. Pub. 2008/0183111 | June 31, 2008 | Device And Method For Generating Shock Waves |
| EP1981463 | | Shock Wave Treatment Device And Method Of Use |
| EP1981412 | | Improved Shock Wave Treatment Device |
| WO 2007/098300 | Aug. 30, 2007 | Shock Wave Treatment Device And Method Of Use |
| WO 2007/087470 | Aug. 2, 2007 | Improved Shock Wave Treatment Device |

**THE PATENTS-IN-SUIT**

21.    SoftWave TRT is the assignee of United States Patent Nos. 8,535,249, entitled *Pressure Pulse/Shockwave Apparatus For Generating Waves Having Plane, Nearly Plane, Convergent Off Target Or Divergent Characteristics* and 7,841,995 entitled *Pressure Pulse/Shock Wave Therapy Methods And An Apparatus For Conducting The Therapeutic Methods* (collectively, the "Patents-in-Suit") and possesses all right, title, and interest in the Patents-in-Suit, including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages, as described below.  The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office after full and fair examination.

22.    SoftWave TRT currently has product lines developed for the treatment of five distinct areas of care: (a) CardioGold™ – cardiac and vascular indications; (b) LithoGold™ – lithotripsy and urology indications; (c) OrthoGold™ – orthopedic indications; (d) UroGold™ – urology indications; (e) VetGold™ – veterinary indications; and (f) DermaGold™ – wound care indications.

23.    Currently, SoftWave TRT's three primary initiatives consist of: (a) selling approved devices throughout North America; (b) securing legal protection for its products and intellectual property; and (c) obtaining regulatory approval or clearance in the United States.

### COUNT I

### Patent Infringement (U.S. Patent No. 8,535,249)

24.    Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

25.    United States Patent No. 8,535,249 (hereinafter, the "'249 Patent") was duly and legally issued by the USPTO on September 17, 2013 to its inventors, Walter Uebelacker, Reiner Schultheiss, Wolfgang Schaden, and John Warlick, and was initially assigned to General Patent, LLC. A true and accurate copy of the '249 Patent is attached hereto as **Exhibit C** and is incorporated herein by express reference.

26.    As of September 30, 2020, in an Assignment of Patent Rights, SoftWave TRT is the owner of all rights, title and interest in the '249 Patent, among other patents.

27.     The '249 Patent recites claims directed to an apparatus for generating pressure pulse/shock waves to produce a tissue reaction in a subject to which the wave is administered and wherein the waves have a power density in the range of approximately 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate living tissue and avoiding tissue damage.

28.     The Defendant has infringed the '249 Patent, either literally or under the doctrine of equivalents, through the promotion, advertising, commercial development, branding, and sales of the Accused Product.  Upon information and belief, Defendant has infringed and continues to infringe one or more claims of the '249 Patent, including at least Claims 1 and 20 (the "'249 Patent Claims") because it promotes, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Product.  Specifically, the Defendant has infringed the '249 Patent by making, using, promoting, selling, offering for sale, and/or importing into the United States devices claimed and disclosed in the '249 Claims.

29.     Defendant has intentionally induced infringement of the '249 Patent Claims in this district and elsewhere in the United States, by their intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused others to use the Accused Product in an infringing manner.  Despite knowledge of the '249 Patent as early as the date of service of this Complaint, the Defendant continues to encourage, instruct, enable, and otherwise cause their customers to use devices claimed in the '249 Patent Claims.  The provision of and sale of the Accused Product provides Defendant with a source of revenue and business focus.   Defendant has specifically intended its customers to use the Accused Product in such a way that infringed the '249 Patent. Defendant knew that its actions, including but not limited to, making the Accused Product available for sale under their trademarked brand, would induce, has induced, and will continue to induce infringement by their vendors and customers by continuing to sell, support, and instruct said customers on using the Accused Product.

30.     Specifically, the preamble of Claim 1 of the '249 Patent discloses an "[a]pparatus for generating pressure pulse/shock waves comprising."  Ex. C at Claim 1.

31.     The IFS Device is an apparatus for generating an extracorporeal shock wave and is advertised as:



Intelect® Focus Shockwave

Greater Power & Depth for Better Treatment

In Extracorporeal Shock Wave Therapy (ESWT), a cylindrical wave is generated underwater inside the handpiece. This wave is focused through the reflector and transmitted into the tissue.

Chattanooga's Intelect Focus Shockwave device electromagnetically generates an extracorporeal shock wave, which produces a high pressure peak in a very short amount of time (<2μs). Thus, allowing for focused treatment of heel spur at a depth of 1 inch. The shock wave is focused to a small targeted area for treating heel pain due to chronic proximal plantar fasciitis.

*See* Focus Shock Wave Brochure at **Exhibit D**.

32.    Defendant further provides:

> Intuitive and easy to use
>
> The Intelect Focus Shockwave® is operated via a touch screen that displays all essential parameters such as frequency, energy and total number of applied shock waves. Previously stored and customised treatment parameters can be easily retrieved, preventing the need for repetitive manual navigation, and ultimately saving time for the user.

*See id.*

33.    Defendant further cites resources on the benefits of ESWT and states that:

> "Focused Shock Wave therapy: a non-invasive treatment option for patients with heel pain due to chronic proximal plantar fasciitis*.

*See id.* (citing Gollwitzer, H. et al., Clinically relevant effectiveness of focused Extracorporeal shock wave therapy in the treatment of chronic plantar fasciitis: a randomized, controlled multicenter study)

34.    Claim 1(a) of the '249 Patent discloses "a pressure pulse/shock wave (PP/SW) source." Ex. C at Claim 1.

35.    The IFS Device includes an applicator in the housing, as indicated below, and it is a

pressure pulse/shockwave (PP/SW) source:



*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

36.    Claim 1(b) of the '249 Patent discloses "a housing enclosing said PP/SW source."  Ex. C at Claim 1.

37.    The IFS Device includes a housing, as indicated below, which encloses the applicator that is a PP/SW source.  *See id.*



38.    Claim 1(c) of the '249 Patent discloses

> an exit window from which shock wave fronts of waves generated by said PP/SW source emanate, wherein said shock wave fronts have plane, nearly plane, convergent off target or divergent characteristics wherein the apparatus is shaped and dimensioned to provide the shock wave fronts having a power density level to produce a tissue reaction in a subject to which the wave is administered and wherein the waves have a power density in the range of approximately 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a living tissue while avoiding tissue damage.

Ex. C at Claim 1.

39.     The IFS Device includes an "exit window" in the applicator, the F-SW handwave as shown below, from which shock waves emanate.



See **Exhibit E** for the Focus Shockwave Operating Manual.

40.     The shock waves are created from the F-SW handpiece, the PP/SW source.

41.     Upon information and belief, the shock wave fronts include plane, nearly plane, convergent off target or divergent characteristics.

42.     The apparatus is the F-SW handpiece, which is, upon information and belief, shaped and dimensioned to provide the shock wave fronts having a power density level to produce a tissue reaction in a subject (patient) to which the wave is administered and whether in the waves have a power density in the range of 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a living tissue while avoiding tissue damage.  This is shown in the recommended protocol provided by CR below:

> ## Recommended protocol
>
> Energy level: 0.25 mJ/mm² [5,6]
>
> Frequency: 4 Hz
>
> Stand-off: Short/Long
>
> Three sessions of 2000 impulses in
> weekly intervals[5,6,7,8]

*See* Ex. D.

43.     Specifically, CR provides that the IFS Device offers the following "Key features," including a power density within the claimed range and stimulates living tissue while avoiding tissue damage:

> - LCD touch screen
> - Enhanced Energy: 0.01 - 0.55mJ/mm2
> - Broad Frequency Range: 1 - 8Hz
> - 2 stand-off variations
> - 4.7" penetration with pinpoint focus
> Benefits
> - Short treatment time (a few minutes)
> - Precise and targeted application
> - Results in a few treatments (1-5)
> - Deep tissue can be reached
> - Non-invasive and no known significant adverse effects
> - Alternative to medication

*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.  (highlights added for emphasis).

44.     On information and belief, Defendant's IFS Device meets the elements of Claim 1 of the '249 Patent, and Defendant had pre-suit knowledge of SoftWave TRT's claim that Defendant infringed its '249 Patent.

45.     Specifically, the preamble of Claim 20 of the '249 Patent discloses an "[a] therapeutic device for administering a shock wave to produce a living tissue reaction in a subject comprising." Ex. C at Claim 1.

46.     The IFS Device is a therapeutic device for administering shock waves to produce a

living tissue reaction in a subject (patient). According to CR's website, the IFS Device offers



In Extracorporeal Shock Wave Therapy (ESWT), a cylindrical wave is generated
underwater inside the handpiece. This wave is focused through the reflector
and transmitted into the tissue.

Chattanooga's Intelect Focus Shockwave device electromagnetically generates
an extracorporeal shock wave, which produces a high pressure peak in a very
short amount of time (<2μs). Thus, allowing for focused treatment of heel spur
at a depth of 1 inch. The shock wave is focused to a small targeted area for
treating heel pain due to chronic proximal plantar fasciitis.

*See* Exhibit D.

47. Claim 20(a) discloses "a housing." Ex. C at Claim 20.

48. The IFS Device includes a housing:



*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

49. Claim 20(b) discloses "a shock wave source disposed in the housing." Ex. C at Claim 20.

50. The IFS Device includes a shock wave source disposed in the housing as depicted

below:



*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

51.    Claim 20(c) discloses a "wave directing and shaping structure in the housing responsive to the shock wave for causing a planar shock wave to be emitted from the housing and transferred to a living tissue." Ex. C at Claim 20.

52.    As shown with respect to Claim 20(b) above, the applicator is in the housing and is the wave directing and shaping structure responsive to the shock wave for causing a planar shock wave to be emitted from the applicator, which is in the housing, and transfer it to the patient.

53.    Claim 20(d) discloses "structure for coupling the shock wave to the subject." Ex. C at Claim 20.

54.    As discussed with respect to Claim 1(c) above, the exit window of the applicator is a structure for coupling the shock wave to the subject (patient).  As shown on CR's website, the wand delivers the shock wave to the patient and the exit window is coupling the shock wave to the tissue:

> Greater Power & Depth for Better Treatment
> In Extracorporeal Shock Wave Therapy (ESWT), a wave is produced by a small explosion generated underwater inside an applicator. This wave is focused through a lens and transmitted into the tissue.
>
> Chattanooga's Intelect Focus Shockwave device electromagnetically generates an extracorporeal shock wave, which produces a high pressure peak in a very short amount of time (<2s). This can penetrate deep into the tissue, up to approximately 4.7", with a precise focus on a small target, for treating heel pain due to chronic proximal plantar fasciitis.

*See* https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

55.    Claim 20(e) discloses "wherein the device is shaped and dimensioned to provide the planar shock wave having a power density level to produce a tissue reaction in a subject to which the wave is administered and wherein the shock wave has a power density in the range of approximately 0.01mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate the living tissue while avoiding tissue damage." Ex. C at Claim 20.

56.    The device is the F-SW handpiece, which is, upon information and belief, shaped and dimensioned to provide the shock wave fronts having a power density level to produce a tissue reaction in a subject (patient) to which the wave is administered and whether in the waves have a power density in the range of 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a living tissue while avoiding tissue damage. This is shown in the recommended protocol provided by CR below:

Recommended protocol

Energy level: 0.25 mJ/mm² [5,6]
Frequency: 4 Hz
Stand-off: Short/Long
Three sessions of 2000 impulses in weekly intervals[5,6,7,8]

*See* Ex. D.

57.    The IFS Device is a device shaped and dimensioned, upon information and belief, to provide a planar shock wave having a power

58.    density level to produce a tissue reaction in the subject (patient) to which the shock wave is administered. On information and belief, the shock wave has a power density in the range of 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a living tissue while avoiding tissue damage. Specifically, CR provides that the IFS Device offers the following "Recommended protocol" including an energy level within the claimed range and stimulates living tissue while avoiding tissue damage:

> ## Recommended protocol
>
> Energy level: 0.25 mJ/mm² [5,6]
> Frequency: 4 Hz
> Stand-off: Short/Long
> Three sessions of 2000 impulses in
> weekly intervals [5,6,7,8]

*See* Ex. D.

59.   On information and belief, Defendant's IFS Device meets the elements of Claim 20 of the '249 Patent, and Defendant had pre-suit knowledge of SoftWave TRT's claim that Defendant infringed its '249 Patent.

60.   On information and belief, Defendant could not reasonably, subjectively believe that their actions did not constitute infringement of the exemplary Asserted Claims.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constituted infringement, Defendant continued its infringing activities. As such, Defendant willfully infringed the Asserted Claims.

61.   On information and belief, Defendant intentionally induced infringement of the Asserted Claims and committed contributory infringement in this district and elsewhere in the United States, by providing the IFS Devices necessary for their customers to infringe the Asserted Claims.

62.   Plaintiff is entitled to recover from the Defendant the damages sustained by Plaintiff as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.   Plaintiff is entitled to recover from Defendant enhanced damages sustained by Plaintiff as a result of Defendant's willful infringement due to Defendant's knowledge of its infringement prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

## COUNT II

## Patent Infringement (U.S. Patent No. 7,841,995)

64.    Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

65.    United States Patent No. 7,841,995 (hereinafter, the "'995 Patent") was duly and legally issued by the USPTO on November 30, 2010 to its inventors, Reiner Schultheiss, Wolfgang Schaden, and John Warlick, and was initially assigned to General Patent, LLC.  Attached hereto as **Exhibit F** is a true and correct copy of the '995 Patent and is incorporated herein by express reference.

66.    As of September 30, 2020, in an Assignment of Patent Rights, SoftWave TRT is the owner of all rights, title and interest in the '995 Patent, among other patents.

67.    The '995 Patent recites claims relating to the field of treating mammals with acoustic pressure pulse shock waves, generally, and more specifically, to treating various conditions found in humans and animals using shockwaves that are generated as either focused waves at high or low energy levels or non-focused waves at preferably low energy levels or a combination of such waves.

68.    The claims of the '995 Patent are directed to a method of stimulating a substance that is tissue having cells, which can be an organ of a mammal, including a human.  Such organ may include the skin or any other organ.  The tissue may be, *inter alia*, muscle or tendon and may be part of the vascular system, a part of the nervous system, a part of the urinary systems, a part of the nervous system, a part of the lymph node or pituitary systems.

69.    Defendant has infringed and continues to infringe the '995 Patent, either literally or under the doctrine of equivalents, by promoting, marketing, training, and licensing the use of infringing methods.  Specifically, Defendant has infringed and continues to infringe one or more claims of the '995 Patent, including at least Claims 1 and 3 (the "'995 Patent Claims") by promoting, marketing, and advertising the IFS Device to potential customers.  As such, the Defendant has infringed the '995 Patent by utilizing the methods claimed and disclosed in the '995 Claims.

70.    Defendant has intentionally induced and continues to induce infringement of the '995 Patent Claims in this district and elsewhere in the United States, by their intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused others to use

the IFS Device in an infringing manner. Despite knowledge of the '995 Patent at least as early as the date of service of this Complaint, Defendant continues to encourage, instruct, enable, and otherwise cause their customers to use their Phoenix device, in a manner which infringes the '995 Patent claims.[1]

71.    The preamble of Claim 1 of the '995 Patent discloses "[t]he method of stimulating a cellular substance wherein the cellular substance is a tissue having cells and the tissue is either part of an organ or the entire organ of a human or animal comprises the steps of." Ex. E at Claim 1.

72.    The IFS Device is used to stimulate human tissue using pressure pulse/shock waves and is advertised as:

> Greater Power & Depth for Better Treatment
> In Extracorporeal Shock Wave Therapy (ESWT), a wave is produced by a small explosion generated underwater inside an applicator. This wave is focused through a lens and transmitted into the tissue.
>
> Chattanooga's Intelect Focus Shockwave device electromagnetically generates an extracorporeal shock wave, which produces a high pressure peak in a very short amount of time (<2s). This can penetrate deep into the tissue, up to approximately 4.7", with a precise focus on a small target, for treating heel pain due to chronic proximal plantar fasciitis.

https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

73.    Claim 1(a) of the '995 Patent discloses a step of "treating the cellular substance." Ex. E at Claim 1.

74.    The IFS Device is used to treat human tissue, which is a cellular substance. https://www.chattanoogarehab.com/us/intelect-focus-shockwave-21090-us.

75.    Claim 1(b) of the '995 Patent discloses

---

[1] See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012); see also *Soteria Encryption, LLC v. Lenovo United States, Inc.*, Case No. CV 16-7958-GW(JPRx), 2017 WL 3449058, *2 (C.D. Cal. Feb. 27, 2017) ("courts have held that post-suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for induced infringement.); *Labyrinth Optical Technologies, LLC v. Fujitsu America, Inc.*, Case No. SACV 13-0030 AG (MLGx), 2013 WL 12126111 (C.D. Cal. Aug. 201, 2013) ("The Federal Circuit therefore held that knowledge of the asserted patent from a complaint in the same case is sufficient to meet the knowledge requirement of indirect infringement.").

activating an acoustic shock wave generator or source to emit pressure pulses or acoustic shock waves directed toward the substance to impinge the substance with pressure pulses or shock waves having a low energy density in the range of 0.00001 mJ/mm2 up to 1.0 mJ/mm2; the pressure pulse being an acoustic pulse which includes several cycles of positive and negative pressure,

wherein the pressure pulse has an amplitude of the positive part of such a cycle should be above 0.1MPa and the time duration of the pressure pulse is from below a microsecond to about a second, rise times of the positive part of the first pressure cycle in the range of nanoseconds (ns) up to some milli-seconds (ms), the acoustic shock waves being very fast pressure pushes having amplitudes above 0.1 MPa and rise times of the amplitude being below 100's of ns, the duration of the shock wave is typically below 1-3 micro-seconds (μs) for the positive part of a cycle typically above some micro-seconds for the negative part of the cycle;

Ex. E at Claim 1.

76.    On information and belief, the IFS Device comprises an activatable shock wave generator used to emit pressure pulses or acoustic shock waves. On information and belief, the shock wave has an energy density in the range of 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a substance (i.e., human tissue and/or human tissue covered structure) being treated. Specifically, CR provides that the IFS Device offers the following "Recommended protocol" including an energy level within the claimed range and stimulates living tissue while avoiding tissue damage:



Recommended protocol

Energy level: 0.25 mJ/mm² [5,6]
Frequency: 4 Hz
Stand-off: Short/Long
Three sessions of 2000 impulses in weekly intervals [5,6,7,8]

*See* Ex. D.

77.    Claim 1(c) of the '995 Patent discloses

subjecting the cellular substance to convergent, divergent, planar or near planar acoustic shock waves or pressure pulses in the absence of a focal point imping the substance stimulating a cellular response in the absence of creating cavitation bubbles evidenced by not experiencing the sensation of cellular hemorrhaging caused by the emitted waves or pulses in the substance wherein the cellular substance is positioned within a path of the emitted shock waves or pressure pulses and away from any localized geometric focal volume or point of the emitted shock waves wherein the emitted shock waves or pressure pulses either have no geometric focal volume or point or have a focal volume or point ahead of the cellular substance or beyond the cellular substance thereby passing the emitted waves through the cellular substance while avoiding having any localized focal point within the cellular substance wherein the emitted pressure pulses or shock waves are convergent, divergent, planar or near planar and the pressure pulse shock wave generator or source is based on electro-hydraulic, electromagnetic, piezoceramic or ballistic wave generation having an energy density value ranging as low as 0.00001 mJ/mm2 up to 1.0 mJ/mm2.

78.    On information and belief, Defendant's IFS Device meets the elements of Claim 1 of the '995 Patent, and Defendant had pre-suit knowledge of SoftWave TRT's claim that Defendant infringed its '995 Patent.  *See* Exhibits A & B.

79.    Claim 3 of the '995 Patent discloses "[t]he method of stimulating a substance of claim 1 wherein the organ is either a heart, a brain, skin, a live[r] or a kidney."  Ex. E at Claim 3.

80.    On information and belief, the IFS Device is used to stimulate the skin.

81.    On information and belief, Defendant's IFS Device meets the elements of Claim 3 of the '995 Patent, and Defendant had pre-suit knowledge of SoftWave TRT's claim that Defendant infringed its '995 Patent.

82.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

83.    Plaintiff is entitled to recover from Defendant for the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.     Defendant's infringement of Plaintiff's rights under the '995 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

85.     Plaintiff demands a trial by jury on all issues.

WHEREFORE Plaintiff SoftWave TRT prays upon this Court for the following relief:

A.     That summons issue and Defendant be served according to law;

B.     That Plaintiff recovers from Defendant all past and future damages caused by its patent infringement;

C.     An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

D.     An adjudication that Defendant has induced infringement of one or more claims of the Patents-in-Suit;

E.     An adjudication that Defendant has contributed to the infringement of the Patents-in-Suit;

F.     An award of damages to be paid by the Defendant adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

G.     A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement with respect to any one or more of the claims of the Patents-in-Suit;

H.     An adjudication that Defendant's acts of infringement have been willful;

I.      That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

J.      Any further relief that this Court deems just and proper.

This 25th day of August, 2025.

**INSIGHT, PLC**


By: _/s/ Steven W. Ritcheson_
    Steven W. Ritcheson

*Attorney for Plaintiff*

23